[No. B079014. Second Dist., Div. Six. Dec. 20, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
WINFRED BELL, Defendant and Appellant.

COUNSEL

Dan Mrotek, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne, David F. Glassman and Sally P. Brajevich, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Winfred Bell appeals from the order extending his commitment to the Department of Mental Health after a jury found that he continued to be a mentally disordered offender (MDO). (Pen. Code, §§ 2962, 2966, subd. (c).) He contends: "I. The trial court erred in failing to correctly instruct on the time parameter for proof of the MDO criteria and its error was prejudicial. II. The trial court committed reversible error in allowing the prosecution's expert to testify to an opinion by an out of court doctor."

The record reflects that, on March 26, 1991, appellant was sentenced to a prison term of three years after he was convicted of willfully inflicting corporal injury on his spouse (Pen. Code, § 273.5). On May 26, 1992, the Board of Prison Terms (BPT) found appellant to be an MDO (Pen. Code, § 2962) and he was placed on parole with the condition that he be committed to the Department of Mental Health for treatment.

After the BPT extended his commitment at a hearing held on June 2, 1993, appellant filed a petition requesting a hearing before a jury to determine whether he still came within the MDO criteria. (Pen. Code, § 2966, subd. (b).)

The hearing was held on August 3 and 4, 1993. Psychiatrist Araceli Lardizabal testified that she was appellant's treating physician. In her opinion, based on appellant's history, which included three suicide attempts prior to his present confinement, appellant had been suffering from a schizo-affective mental disorder for the past twenty-five years. He was not in remission, and could not be kept in remission without treatment. In January of 1993, appellant cut himself twice with a razor blade. In April of 1993, he had hallucinations. He reported he had been hearing voices on and off since December of 1992. On June 29, 1993, appellant punched a patient near his ear. On July 8, 1993, appellant struck a wall with his fist and complained of

pain, but refused to have the hand X-rayed. Appellant refused to take part in community reentry group therapy on July 9, 1993. On July 23, 1993, appellant told the hospital staff that someone had come into his room and molested him.

Dr. Lardizabal said that she felt appellant's history of suicide indicated he could be a danger to others because his anger towards others had become self-directed. She also said appellant could appear normal for periods of time and that medication could ameliorate appellant's symptoms to the point that he would no longer be motivated to act upon those symptoms. In Dr. Lardizabal's opinion, appellant's mental disorder caused him to be a substantial danger to the safety of others.

During direct examination of Dr. Lardizabal, the following colloquy occurred: "[PROSECUTOR] And Ma'am, have you considered the evaluation and the opinion of Dr. Audrey Mertz, the other psychiatrist, in coming to these conclusions that you've expressed today? [¶] A Yes. [¶] Q And has she agreed with your diagnosis and conclusions? [¶] [APPELLANT'S COUNSEL]: Objection. Hearsay. [¶] THE COURT: Overruled. [¶] THE WITNESS: Well, it's more of her making that opinion first that Mr. Bell remained a danger to others due to . . . mental disorder. And I concur with her as his present psychiatrist, Dr. Mertz being his previous treating psychiatrist, that Mr. Bell remains a substantial danger to others at present. [¶] [PROSECUTOR]: And there have been other opinions that you've also used in coming to your conclusions here today? [¶] A Yes."

In defense, psychologist Theodore Donaldson testified that, at the time he interviewed appellant on April 19, 1993, appellant's severe mental disorder appeared to be in remission and that, based on that remission, appellant did not then appear to be a substantial danger to others. Dr. Donaldson said he based his opinion on the facts that appellant's behavior dramatically improved when "he was put on Clozopine," and that "by the time [Donaldson had] seen him, he had been very cooperative and getting along pretty well on the ward for about three weeks." Donaldson said that during the interview, appellant "had a slightly paranoid flavor in his acts but not of sufficient intensity that I thought it was a residual symptom." Dr. Donaldson said he was aware that appellant's period of "remission had been quite short, but [Donaldson] felt that logically [he] had to make [the] conclusion [that appellant was in remission and, therefore, did not present a danger to society]." Dr. Donaldson was asked, "Are there any things that [Dr. Lardizabal] testified to that happened after April that happened after June 2d that would change your opinion as to the matters you just testified to?" He replied, "Yes" and said it was the fact that appellant was unable to control

his behavior, even on Clozapine, and that there had been subsequent incidents of self-abusive and assaultive behavior. Dr. Donaldson acknowledged that appellant could not be kept in remission without treatment, that he was not in remission at present, and that he posed a substantial danger to others because of his mental disorder.

Appellant admitted that he was suffering from a mental disorder, but said he wanted to be treated at a minimum security hospital. He said his medication was not doing him any good, that he had tried to commit suicide in January of 1993 because he heard voices and his son had just died, and that the fellow patient appellant hit had been trying to take advantage of another patient. Appellant did not attend the group therapy session because he was sick.

During his closing argument, the prosecutor commented: "[W]e had the medical doctors, both Dr. Mertz and Dr. Lardizabal, who had had extensive contacts and extensive data to evaluate, who come, I think, with what is shown to be the only reasonable explanation back in April and the June hearing; that he met all three criteria."

The court instructed the jury that, in order to find that appellant was an MDO, it was required to find that appellant had a serious mental disorder, that he was not in remission, and that he represented a substantial danger of physical harm to others. The court did not define a time frame for those findings except the period of time applicable to the finding of no remission. In that regard, the court instructed the jury pursuant to Penal Code section 2962, subdivision (a): "A person 'cannot be kept in remission' without treatment if during the year prior to the question being before the Board of Prison Terms or a trial court, he . . . has been in remission and . . . has made a serious threat of substantial physical harm upon the person of another . . . , or . . . has intentionally caused property damage, or . . . has not voluntarily followed the treatment plan."

After the jury had retired to deliberate, both parties told the court that they had no objections to the instructions given by the court. The court then said to appellant's counsel, "I think . . . you wanted to put on the record some resolution of an . . . evidentiary discussion that we had earlier in chambers." The prosecutor remarked, "You mean where [appellant's counsel] was objecting to an incident that occurred after the Board of Prison Term hearing on June 2nd . . . being included. [¶] I countered by indicating that it's my reading of the Penal Code section that as opposed to an original certification, which talks specifically as to the date of the Board of Prison Term hearing, that there is no such language and seemingly no legislative intent and

certainly no logical reason to have such a reading of the Penal Code in regards to a recertification, and that I felt that the evidence was proper and was quite relevant and germane to the issues in the case. [¶] And I believe the court agreed with my arguments; is that correct, Your Honor?" The court agreed.

At the court's invitation to place his objection on the record, appellant's counsel stated: "I think . . . that evidence, after this certification hearing, should not be entered at trial, it seems to me that the [rationale] for that, whether it's a certification hearing or an annual hearing, is the same."

 Appellant's contention that reversal is required because the court did not instruct the jury, sua sponte, that it had to determine whether, as of June 2, 1993, the date of the BPT hearing, appellant had a severe mental disorder which was not in remission and represented a substantial danger to others must fail. Subdivision (c) of Penal Code section 2966 reads in relevant part: "If the Board of Prison Terms continues a parolee's mental health treatment under Section 2962 . . . , the procedures of this section shall only be applicable for the purpose of determining if the parolee has a severe mental disorder, whether the parolee's severe mental disorder is not in remission or cannot be kept in remission without treatment, and whether by reason of his . . . severe mental disorder, the parolee represents a substantial danger of physical harm to others." Subdivision (b) of Penal Code section 2966 reads in relevant part: "A prisoner who disagrees with the determination of the Board of Prison Terms that he . . . meets the criteria of Section 2962, may file in the superior court . . . a petition for a hearing on whether he . . . , as of the date of the Board of Prison Terms hearing, met the criteria of Section 2962." Respondent argues that the words, "the procedures of this section shall only be applicable," indicate that the requirement of establishing that a parolee meets the MDO criteria as of the date of the BPT hearing applies only to the initial commitment order and not to a subsequent order continuing commitment. However, it is clear that the use of the word, "only," refers to the fact that only three criteria need to be satisfied in continuing a parolee's commitment as an MDO as contrasted to the seven criteria, set forth in subdivision (d) of Penal Code section 2962, which must be met to satisfy the requirement for the initial certification as an MDO. Therefore, appellant is correct that, at both a hearing challenging the parolee's initial commitment and at an annual review hearing continuing that commitment, the trier of fact is required to determine that the parolee met the MDO criteria on the date of the most recent BPT hearing. Accordingly, the jury should have been instructed that it was required to find that appellant met the appropriate criteria as of that date.

Nevertheless, appellant was not prejudiced by the failure to instruct the jury that it must make its findings as of the date of the BPT hearing.

Although Dr. Donaldson had testified that appellant appeared to be in the remission during their single interview, Donaldson also admitted that appellant showed signs of paranoid behavior at that time; that appellant had only been in remission for a very short period of time; and that, contrary to Donaldson's impression during the interview, appellant's subsequent conduct indicated that he could not be kept in remission even when taking his medication. Appellant stated that he believed the medication, which Donaldson said had caused the remission of symptoms, was not doing appellant any good. Therefore, it was virtually certain that appellant would not voluntarily follow the treatment plan even if it was beneficial. The testimony presented in defense was weak and Dr. Lardizabal's testimony regarding appellant's mental condition and activities just prior to the BPT hearing, on which she based her finding that he met the MDO criteria was very convincing. Therefore, it is not reasonably probable that, even if they had been instructed that they were to determine whether appellant's condition placed him in the status of an MDO as of June 2, 1993, the jurors would have found that appellant did not meet the MDO criteria on that date. Therefore, the error in not instructing the jury that the evidence had to establish that appellant met the MDO criteria as of the date of the latest BPT certification hearing was harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Appellant's contention that it was reversible error to permit Dr. Lardizabal to testify that she concurred with Dr. Mertz's opinion that appellant was a danger to others also lacks merit. Dr. Lardizabal could properly refer to Dr. Mertz's report as providing a basis for Dr. Lardizabal's opinions. (See *People* v. *Miller* (1994) 25 Cal.App.4th 913, 917-919 [31 Cal.Rptr.2d 423].) Even if it is assumed that the brief references to Dr. Mertz's conclusions by Dr. Lardizabal and the prosecutor amounted to an improper introduction of opinion evidence (*People* v. *Piper* (1980) 103 Cal.App.3d 102, 112 [162 Cal.Rptr. 833]), any error was harmless in light of the overwhelming evidence that, with the possible exception of a brief insignificant period in the spring of 1993, appellant's mental illness has continued to cause him to be a substantial danger to himself and to others. (*People* v. *Watson, supra*, 46 Cal.2d at p. 836.)

The judgment (order under review) is affirmed.

Gilbert, J., and Yegan, J., concurred.