173 Cal.App.4th 266 (2009)
___ Cal.Rptr.3d ___
DANIEL LOPEZ, Petitioner,
v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.
No. G040679.
Court of Appeals of California, Fourth District, Division Three.
April 23, 2009.
*269 Doreen Boxer, Public Defender, Lyly Brantley and Pamela P. King, Deputy Public Defenders, for Petitioner.
No appearance for Respondent.
Michael A. Ramos, District Attorney, Grover D. Merritt and Grace B. Parsons, Deputy District Attorneys, for Real Party in Interest.

OPINION
IKOLA, J.
Petitioner Daniel Lopez seeks a writ of mandate directing the superior court (1) to vacate its order denying his motion to dismiss the People's petition under Penal Code section 2970, and (2) to address the merits of his motion to dismiss.[1] The People's section 2970 petition sought to extend Lopez's commitment to a state hospital as a mentally disordered offender (MDO) for an additional year. Lopez's motion to dismiss the petition argued he was not an MDO because his underlying crime did not involve force or violence as required under section 2962. We deny Lopez's petition for a writ of mandate because his challenge to his original certification as an MDO is untimely.

*270 FACTS
On December 26, 2002, Lopez attempted to rob a Laundromat patron. As the victim attempted to enter the Laundromat, Lopez approached him demanding "whatever change he had in his pocket." When the victim said he had no change "and to leave him alone," Lopez stated, "I know you got some change for me, give me your change." The victim replied, "I don't have change for you, I'm going to do my laundry." Lopez stepped back. The victim entered the Laundromat and prepared to wash his laundry. The victim then went out to his vehicle to get more laundry and his detergent.
When the victim reentered the Laundromat, Lopez approached him "in a more threatening manner, standing very close to him, and demanded that he give him any money that he had in his pocket." The victim told Lopez to move out of the way and "leave him alone." Lopez said, "Give me your fucking money. I know you have money. Give me your chump change." The victim went back out to his vehicle to pick up other "necessities . . ., as well as his steering column locking device (`The Club')" for protection if necessary.
After the victim had been in the Laundromat for several minutes, Lopez approached him from behind and entered into a "fighting stance directly in front of him within six inches of his face." Lopez demanded, "Give me all your money. I know you have money. Give me whatever money you have." Lopez "reached down into his front pocket." The victim, afraid that Lopez "might have a knife or a gun," hit him across the head with the Club.
Lopez ran outside. He was apprehended shortly thereafter, and police found a knife located in his right front pocket.
Lopez was read his rights under Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]. He stated, inter alia, the victim's "mere presence was offensive to him" and the victim had invaded his space and privacy. Lopez stated "he was a very spiritual person, and he could read thoughts and could get into [the victim's] mind, and he knew that [the victim] was just invading his privacy . . . ."
Lopez was charged with attempted second degree robbery (§§ 664, 211) and carrying a concealed dirk or dagger (§ 12020, subd. (a)(4)). He pleaded guilty to carrying a concealed dirk or dagger. The court sentenced him to 16 months in prison. Based on defendant's in-custody credits at the time, he was released directly to parole.
*271 One month later, Lopez violated parole, was returned to custody, and was then released again. Two months after that, he again violated parole, was returned to custody, and was released a third time. This sequence recurred the following month and then the month after that, except this last time Lopez was kept in custody for a year, until September 2005. At that time, he was released on parole with the special condition that he participate in treatment with the State Department of Mental Health pursuant to section 2962.
At an October 2005 certification hearing where Lopez was present with counsel, the Board of Parole Hearings[2] (the Board) found that Lopez met section 2962's criteria for an MDO, based in part on his December 26, 2002 possession of a concealed dirk or dagger.
In January 2006, Lopez filed a petition pursuant to section 2966, subdivision (b), requesting a trial to determine whether he met the MDO criteria. The next month, Lopez, who was represented by counsel, withdrew his petition without prejudice. The record does not disclose why he withdrew his petition.
At an October 2006 annual review hearing where Lopez was present with counsel, he was recommitted as an MDO for an additional year of treatment. He was scheduled to be discharged in October 2007.
On June 18, 2007, the People filed a petition to extend Lopez's commitment under section 2970 for an additional year. Lopez moved to dismiss the People's section 2970 petition on grounds of insufficient evidence. He argued the foundational element that an MDO used force or violence in committing the underlying crimean element generally required for commitment under section 2962, subdivision (e)(2)was never adjudicated.
The court denied Lopez's motion to dismiss the People's section 2970 petition, ruling Lopez's motion was moot and precluded under the doctrine of res judicata, and that he had waived his right to challenge the Board's determination made at the certification hearing.

DISCUSSION
Lopez contends that, "in opposing the prosecution's [section 2970 petition] to extend his commitment as [an MDO] past the expiration of parole," he had *272 a right to challenge the absence of a foundational element mandated by section 2962"force or violence in the commitment offense"that has "never been determined by a trial court or jury." "Because this argument raises an issue of statutory construction, we apply a de novo standard of review." (People v. Rish (2008) 163 Cal.App.4th 1370, 1381 [78 Cal.Rptr.3d 455].)

Overview of the Act
The Mentally Disordered Offender Act (the Act) requires offenders convicted of certain enumerated crimes related to their mental disorders to receive "mental health treatment during and after the termination of their parole until their mental disorder can be kept in remission" and they no longer pose a danger to society. (In re Qawi (2004) 32 Cal.4th 1, 9 [7 Cal.Rptr.3d 780, 81 P.3d 224].) The Act provides for two potential stages of treatment: (1) treatment during the period of parole (§ 2962) and (2) treatment continuing after the parole period has ended (§§ 2970, 2972).
(1) The first stage comes into play when a prisoner who meets the criteria set forth in section 2962 is required, as a condition of parole, to be treated for a mental disorder. (Ibid.) Section 2962 establishes six criteria for an MDO: (1) the "prisoner has a severe mental disorder" (id., subd. (a)); (2) the disorder "is not in remission or cannot be kept in remission without treatment" (§ 2962, subd. (a)); (3) the disorder caused or aggravated the prisoner's "commission of a crime for which the prisoner was sentenced to prison" (§ 2962, subd. (b)); (4) the prisoner was treated for the disorder for at least 90 days in the year prior to his or her parole or release (§ 2962, subd. (c)); (5) statutorily designated mental health professionals have evaluated the prisoner and certified to the Board that the prisoner meets the above criteria and that because of the mental disorder "the prisoner represents a substantial danger of physical harm to others" (§ 2962, subd. (d)); and (6) the prisoner received a determinate sentence for the predicate crime, and the crime is one of those listed in section 2962, subdivision (e)(2), which includes any crime "in which the prisoner used force or violence, or caused serious bodily injury" (§ 2962, subd. (e)(2)(P)), or any crime "in which the perpetrator expressly or impliedly threatened another with the use of [sufficient] force or violence" (§ 2962, subd. (e)(2)(Q)).
(2) Three of these criteria are deemed foundational or historical issues that are not subject to change with the passage of time. Once established, these criteria "are incapable of change." (People v. Francis (2002) 98 Cal.App.4th 873, 879 [120 Cal.Rptr.2d 90].) These static criteria are: (1) the *273 disorder caused or aggravated the commission of the predicate crime, (2) the prisoner received a minimum 90-day treatment prior to parole or release, and (3) the crime is described in section 2962, subdivision (e). (98 Cal.App.4th at p. 879.) The remaining criteria are dynamic factors subject to change over time. Thus, at some point, the prisoner may no longer suffer from a disorder; the disorder may be in remission and may stay in remission without treatment; and/or the prisoner may cease to present a danger to others. (Id. at pp. 878-879.)
Any prisoner required to accept treatment under section 2962 must be given written notice of his or her right under section 2966 to request a hearing. (§ 2964, subd. (a).) Under section 2966, a prisoner is entitled, upon request, to a hearing before the Board, where the person or agency who certified the prisoner as an MDO bears the burden of proving the prisoner meets section 2962's criteria. (§ 2966, subd. (a).) If the prisoner disagrees with the Board's determination that he or she meets the criteria, the prisoner may petition the superior court for a hearing. (§ 2966, subd. (b).) The prisoner has a right to counsel, and the standard of proof is beyond a reasonable doubt. (Ibid.) The trial is by jury unless waived by both the prisoner and the People. (Ibid.)@
(3) Subdivision (c) of section 2966 provides: "If the [Board] continues a parolee's mental health treatment under Section 2962 when it continues the parolee's parole under Section 3001, the procedures of this section shall only be applicable for the purpose of determining if the parolee has a severe mental disorder, whether the parolee's severe mental disorder is not in remission or cannot be kept in remission without treatment, and whether by reason of his or her severe mental disorder, the parolee represents a substantial danger of physical harm to others."[3] (Italics added.) "[T]he use of the word, `only,' refers to the fact that only three criteria need to be satisfied in continuing a parolee's commitment as an MDO as contrasted to [all six section 2962 criteria] which must be met to satisfy the requirement for the initial certification as an MDO." (People v. Bell (1994) 30 Cal.App.4th 1705, 1710 [36 Cal.Rptr.2d 746].)
A parolee's treatment is discontinued if his or her mental disorder is "put into remission during the parole period, and can be kept in remission." (§ 2968.)
*274 The second stage of treatment under the Act, which involves continuation of a patient's treatment after the termination of parole, is generally governed by sections 2970 and 2972. If, "[n]ot later than 180 days prior to the termination of parole, or release from prison if the prisoner refused to agree to treatment as a condition of parole[,] . . . the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment," the People may "file a petition with the superior court for continued involuntary treatment for one year." (§ 2970.) The petition must specify the current, nonhistorical criteria "that the prisoner has a severe mental disorder, that the severe mental disorder is not in remission or cannot be kept in remission if the person's treatment is not continued, and that, by reason of his or her severe mental disorder, the prisoner represents a substantial danger of physical harm to others." (Ibid.) A court hearing must be conducted on the petition for continued treatment. The patient has a right to counsel, and the standard of proof is beyond a reasonable doubt. The trial is by jury unless waived by both the prisoner and the People. (§ 2972, subd. (a).) If the factfinder finds the petition's allegations of the dynamic factors to be true, the court must order the patient recommitted "for a period of one year from the date of termination of parole . . . or the scheduled date of release from prison. . . ." (§ 2972, subd. (c).)
The same procedure applies when, prior to termination of a one-year period of recommitment, a patient's severe mental disorder "is not in remission or cannot be kept in remission without treatment, and . . . by reason of [the] severe mental disorder, the patient represents a substantial danger of physical harm to others." (§ 2972, subd. (e).) If the People's section 2972 petition for continued treatment is found true, the court must order the patient recommitted for a period of one year from the date of termination of the previous commitment. (§ 2972, subds. (c), (e).) "Petitions to extend the commitment for additional one-year terms may be filed indefinitely, so long as the person's severe mental disorder is not in remission and causes the person to represent a substantial danger of physical harm to others." (People v. May (2007) 155 Cal.App.4th 350, 358 [65 Cal.Rptr.3d 873].)

Denial of Lopez's Motion to Dismiss Was Proper
(4) We turn to Lopez's contention he is entitled to a court hearing on the static criterion of whether his predicate crime involved force or violence. Based on the statute's plain language, the court's ruling denying Lopez's motion to dismiss the People's petition for recommitment under section 2970 was proper. Section 2970 specifies that the only issue to be determined at a court hearing at the recommitment stage is whether the patient meets the dynamic criteria. (§ 2966, subds. (b), (c).)
*275 (5) Even if we deemed Lopez's motion to be a challenge to the Board's original October 2005 certification that he met all the section 2962 criteria (static and dynamic), such a challenge is untimely at this late date. True, the Act does not explicitly set a deadline for a prisoner to challenge, pursuant to section 2966, subdivision (b), the Board's original certification of the prisoner as an MDO. But settled canons of statutory construction require us to "consider the statute read as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework," and to construe the Act in a way "that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (People v. Jenkins (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)
The overall statutory framework of the Act distinguishes between a prisoner's initial MDO certification and subsequent proceedings, and stresses that, at a recommitment hearing during the Act's second phase of treatment, only the dynamic criteria are considered. In other words, the pertinent inquiry at that stage is whether the patient remains a danger to society because he or she suffers from a current mental disorder that is not in remission or cannot be kept in remission without treatment. This emphasis on the patient's current mental state is consistent with the Legislature's intent, in enacting the Act, to provide treatment to persons who pose a danger to society due to severe mental disorders and to protect the public from them. (§ 2960.)
To construe the Act to grant a patient a statutory right to challenge his or her original certification as an MDO at any time ad infinitum, so long as no court has previously adjudicated the particular issue challenged, would lead to absurd results and frustrate the Act's purpose. Years or even decades after the initial certification, an MDO could force the adjudication of the static criteria regarding the predicate crime, its connection to the mental disorder at that time, and the prisoner's initial 90-day treatment, even though evidence has grown stale, witnesses have disappeared, and memories have faded. A dangerous MDO could evade treatment and commitment simply because a historical criterion could not be proved due to the passage of time.
Such an interpretation would prejudice the People, who have no right under the statute to initiate an adjudication of the static criteria. Under section 2966, the prisoner alone is entitled to request a hearing before the Board and petition for a superior court hearing on the original MDO certification. Thus, only the prisoner can determine whether and when the static criteria will be adjudicated in a court. The Act authorizes the People only to petition for *276 recommitment under section 2970 or 2972, based solely on the dynamic criteria. Here, the People stood ready at the time of Lopez's original MDO certification to litigate issues such as whether his underlying offense involved force or violence. Lopez, however, chose to withdraw his petition for a court hearing and attempted to raise the issue for the first time through his motion to dismiss more than five years after his commission of the predicate crime and more than two years after his initial certification as an MDO.
(6) We conclude thatso long as a prisoner has received timely notice of his or her right under section 2966 to request a hearing on the original MDO certification, and unless specific compelling circumstances justify a delayed request for a hearinga prisoner forfeits the right under the Act to request a hearing on the original MDO certification unless he or she files a petition prior to the expiration of the initial commitment. (See People v. Rish, supra, 163 Cal.App.4th at p. 1384 ["because [defendant] never sought a determination from the trial court as to whether he was suitable for outpatient treatment . . ., he forfeited his claim that the trial court erred in failing to make such a ruling"]; People v. Simon (2001) 25 Cal.4th 1082, 1097, fn. 9 [108 Cal.Rptr.2d 385, 25 P.3d 598] ["`forfeiture is the failure to make the timely assertion of a right ...'"]; In re S.B. (2004) 32 Cal.4th 1287, 1293, fn. 2 [13 Cal.Rptr.3d 786, 90 P.3d 746] ["a person who fails to preserve a claim forfeits that claim"].)
(7) In People v. Merfield (2007) 147 Cal.App.4th 1071 [54 Cal.Rptr.3d 834] (Merfield), after the defendant's initial one-year commitment had expired, he filed a section 2966 petition challenging the Board's original certification of him as an MDO. (147 Cal.App.4th at p. 1074.) He had previously filed and withdrawn a section 2966 challenge to the original MDO certification and had been warned by the court, "`[A]fter a long period of time, certainly by the time of your next review, it becomes what we call moot and, so, you would not have the right to refile it after that period.'" (Merfield, at p. 1074.) The Court of Appeal affirmed the trial court's dismissal of the defendant's petition filed after the initial one-year commitment expired, explaining: "An inmate whom the [Board] determines to be an MDO has a right to a court hearing on the six criteria only following the initial commitment determination. Once the time has passed for that first determination and proceedings have been instituted to extend the commitment, the inmate may only challenge the [Board's] determination of his or her current mental status. [Citation.] This rule applies irrespective of whether the first commitment resulted from the inmate's acceptance of the [Board's] determination or from a hearing conducted in the trial court." (Id. at p. 1077.)
*277 The Merfield court based its holding "on the grounds of mootness and waiver."[4] (Merfield, supra, 147 Cal.App.4th at p. 1076.) First, the defendant "waived his right to file a petition challenging the [Board's] initial commitment determination." (Ibid.) He failed "to demonstrate that he was misled or legitimately confused about the time limit on his right to challenge his initial commitment." (Ibid.) Second, the defendant's petition was moot: "[T]rial courts consider the merits of timely filed petitions that are subsequently rendered technically moot as the result of the delays inherent in the judicial process, which are beyond the petitioner's control. Where, as here, the petitioner causes the delay by waiting until after the commitment order has expired to seek relief, the petition is untimely and is subject to dismissal on the ground of mootness." (Id. at p. 1075.) Although Lopez here challenges the recommitment petition by filing a motion to dismiss, rather than a section 2966 petition, the principle is the same. The static factors may only be challenged with a section 2966 petition challenging the original commitment. The static factors may not be challenged after his original commitment has expired.
Lopez's challenge to his original MDO certification, brought after his initial commitment expired, is untimely. He has thereby forfeited his right to challenge the static factors.[5] We therefore do not address his contention his motion was not barred by res judicata or collateral estoppel, because the issue of whether his predicate crime involved force or violence was never adjudicated in a court. We note also that defendant's filing in January 2006 of a section 2966, subdivision (b) petition challenging his original certification as *278 an MDO, and his subsequent withdrawal of that petition, are irrelevant to our analysis here. What matters is that defendant never challenged his original certification during the appropriate time period.

The Cases Relied on by Defendant Are Inapposite
Defendant relies principally on three casesPeople v. Coronado (1994) 28 Cal.App.4th 1402 [33 Cal.Rptr.2d 835] (Coronado), People v. Garcia (2005) 127 Cal.App.4th 558 [25 Cal.Rptr.3d 660] (Garcia), and People v. Hayes (2003) 105 Cal.App.4th 1287 [129 Cal.Rptr.2d 885] (Hayes). Contrary to his arguments, however, these cases do not support his assertion that he has a never-ending right to a court hearing at any time on any issue relating to the static criteria so long as that issue has not previously been fully adjudicated in court.
Coronado does not conflict with Merfield, nor does it have any application here. In Coronado, a psychiatrist certified the prisoner as an MDO prior to his release on parole, and the prisoner petitioned the court for relief. (Coronado, supra, 28 Cal.App.4th at p. 1404.) But by the time of the court hearing, the prisoner no longer suffered from a severe mental disorder, the People could not "`go forward,'" the petition was granted, and the prisoner was therefore discharged on parole. (Id. at pp. 1404-1405.) Seven months later, he "was taken into custody because of a deteriorating mental condition," he was recertified as an MDO, and he again petitioned the superior court for relief. (Id. at p. 1405.) The court determined he met the MDO criteria (including static criteria). (Id. at pp. 1404-1406.) On appeal the prisoner contended his release "`from confinement as an MDO prevented the [Board] from recertifying him an MDO at a later date for the same committing felony sentence.'" (Id. at p. 1404.) The appellate court affirmed the trial court's determination the prisoner was an MDO, holding "that where, as here, the mental health aspect has changed after reincarceration on parole for the same underlying offense, the People are not foreclosed from seeking an MDO determination where parole is again imminent." (Id. at p. 1408.) Significantly to our analysis, the prisoner in Coronado never forfeited his right timely to petition the superior court for relief. The only issue addressed in Coronado was whether a second MDO certification could be upheld while the prisoner was still on parole based upon the same underlying offense.
In Garcia, supra, 127 Cal.App.4th 558, the Court of Appeal held that district attorneys are empowered to initiate commitment proceedings under section 2970 only if mental health officials have first determined that "the prisoner's severe mental disorder is not in remission, or cannot be kept in remission without treatment." (Garcia, at p. 562.) The district attorney in Garcia filed a section 2970 petition for continued involuntary treatment of the *279 prisoner as an MDO, even though mental health professionals recommended against pursuing recommitment because the prisoner's schizoaffective disorder "was in remission and he was no longer a danger of physical harm to others . . . ." (Garcia, at p. 563.) The district attorney merely substituted pedophilia as the prisoner's severe mental disorder, and the trial court ordered the prisoner recommitted for a one-year period. (Ibid.) "Because the prosecutor did not have statutory authority to initiate commitment proceedings under section 2970," the Court of Appeal reversed the trial court's order. (Id. at p. 567.) Garcia examined the limits of the district attorney's statutory authority and is inapposite to the case at hand.
(8) Finally, in Hayes, supra, 105 Cal.App.4th 1287, which preceded Merfield, the Court of Appeal did consider at the recommitment stage a static criterion and, finding that the prisoner's underlying offense was not a qualifying crime under the Act as a matter of law, reversed the trial court's continuation of the prisoner's involuntary treatment. (Hayes, at pp. 1288-1289.) Hayes is distinguishable in two important respects. First, in a footnote, the court noted: "The record does not indicate that Hayes challenged his initial commitment on the ground that the offense of which he was convicted was not a proper basis for such a commitment. However, the People agree that the record of this case does not establish that Hayes is collaterally estopped from raising the issue in connection with his continued commitment." (Id. at p. 1289, fn. 2.) In other words, the People chose to ignore whether the prisoner was precluded from litigating a static criterion at a recommitment proceeding. Specifically, the issue of forfeiture was not raised. Cases are not authority for issues not raised. (Santisas v. Goodin (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399] [appellate decision is authority "only `for the points actually involved and actually decided'"].) Second, the determination that the prisoner's offense was not a qualifying crime involved no factual inquiries, since the appellate court held as a matter of law that the predicate crime (recklessly setting a fire) was deliberately excluded by the Legislature from the offenses enumerated in section 2962, subdivision (e)(2). (Hayes, at pp. 1290-1291.)
Here, Lopez has stated no reason for his delay in seeking adjudication of the factual inquiry of whether his 2002 crime involved force or violence. His challenge to this historical criterion, raised during the recommitment stage of his treatment, is untimely. His challenge has been forfeited.[6]

*280 DISPOSITION
Defendant's petition for a peremptory writ of mandate is denied.
Rylaarsdam, Acting P. J., and Fybel, J., concurred.
NOTES
[1] All statutory references are to the Penal Code.
[2] Effective July 1, 2005, the former Board of Prison Terms was abolished, and all statutory references to the Board of Prison Terms were deemed to be references to the Board of Parole Hearings. (§ 5075, subd. (a).) We adopt the new designation, although the record in this case continues to refer to the former.
[3] Section 3001 mandates that a parolee be discharged from parole after specified periods of continuous parole unless the Board, "for good cause, determines that the person will be retained" on parole. "In the event of a retention on parole, the parolee shall be entitled to a review by the parole authority each year thereafter until the maximum statutory period of parole has expired." (§ 3001, subd. (d).)
[4] Merfield also held the defendant's petition was barred by principles of res judicata and collateral estoppel: "`Under the doctrines of res judicata and collateral estoppel, issues relating to the three criteria concerning past events that have been litigated in an MDO proceeding cannot be relitigated in a subsequent proceeding. [Citation.]' [Citation.] While issues relating to those criteria are not actually `litigated' where the MDO does not petition for a hearing during his initial commitment, preclusive effect is also given to issues that could have been litigated in a prior proceeding. [Citation.] An MDO therefore has but one opportunity to challenge the [Board's] findings on the three criteria concerning past events. The MDO may do so by petitioning for a hearing in the superior court of the county in which he is incarcerated on the [Board's] initial commitment decision before that commitment has expired." (Merfield, supra, 147 Cal.App.4th at p. 1076.)
[5] We prefer to ground our holding on the doctrine of forfeiture. Although the doctrines of waiver, forfeiture, and mootness caused by the passage of time are closely related, the preferred terminology to describe the loss of right by failure timely to assert it is "forfeiture." "Over the years, cases have used the word [`waiver'] loosely to describe two related, but distinct, concepts: (1) losing a right by failing to assert it, more precisely called forfeiture; and (2) intentionally relinquishing a known right. `[T]he terms "waiver" and "forfeiture" have long been used interchangeably. The United States Supreme Court recently observed, however: "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the `intentional relinquishment or abandonment of a known right.'"'" (Cowan v. Superior Court (1996) 14 Cal.4th 367, 371 [58 Cal.Rptr.2d 458, 926 P.2d 438].)
[6] In his reply brief, Lopez contends his commitment violates his constitutional right to due process of law because his original certification as an MDO by the Board required only proof by a preponderance of the evidence under the California Code of Regulations. We do not address this issue since it was raised in the reply brief.