[No. B151206. Second Dist., Div. Six. May 28, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER FRANCIS, Defendant and Appellant.

## COUNSEL

Kent Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc E. Turchin and Kirsten Korn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COFFEE, J.**—Appellant Christopher Francis appeals from the order of the trial court committing him to Atascadero State Hospital (ASH) as a mentally disordered offender (MDO). (Pen. Code, §§ 2962, 2966.)[1] He claims that double jeopardy and res judicata bar the relitigation of his mental state, which was the subject of a prior MDO proceeding. We reverse.

### FACTS

Appellant was serving a prison term for burglary. While receiving psychiatric care, a team of correctional officers ordered him to leave his cell. He refused, and the officers entered and attempted to put him in restraints. Appellant became combative and placed one of the officers in a headlock. The team removed appellant, put him in restraints and administered psychotropic medication. He was subsequently convicted of battery upon a peace officer (the underlying offense) and sentenced to 16 months in state prison. (§ 243, subd. (c)) Before he was to be released on parole, the Board of Prison Terms (BPT) certified him as an MDO.

---

[1]All statutory references are to the Penal Code.

*July 1999 MDO Proceeding*

Appellant filed a petition under section 2966, subdivision (b) to determine whether he met the criteria for treatment as an MDO. He waived a jury trial and the matter was submitted on the basis of three reports. Two psychologists, Doctors Allison Little and Judith Dietch, were of the opinion that appellant met the statutory criteria and was an MDO within the meaning of section 2962.

Defense counsel submitted the report of appellant's treating psychologist at ASH, Dr. Christopher Roach, who had treated appellant for three months in 1999. Dr. Roach concluded that appellant did not qualify as an MDO because he did not have a severe mental disorder. He diagnosed appellant as suffering from polysubstance dependence and an antisocial personality disorder. This disorder caused him to react violently to authority figures and their attempts to restrain him. It was not, however, the result of a severe mental illness. The district attorney noted that Dr. Roach had prepared an unusually thorough report. Counsel stipulated that Dr. Roach's report represented the opinion of the treatment team. The court stated, "I don't know if I need to read [the reports], but I would rather take a look at them." It thereupon granted appellant's petition and he was released on parole without treatment terms.

*Pretrial Motion*

Three weeks after his release, appellant was found wandering in the middle of a freeway. He was arrested and his parole was revoked. Appellant was recommitted to ASH for another two years. In March 2001, before he was to be released on parole, the BPT again certified him as an MDO. Appellant filed a section 2966, subdivision (b) petition to determine whether he met the statutory criteria. Two months later he moved to bar the MDO proceedings. Appellant argued that the subject of his mental state had been litigated and decided in his favor in the 1999 proceeding. Thus, relitigation of this issue was barred by the principles of double jeopardy and res judicata.

At a hearing on the motion, the trial court considered the testimony of Dr. John Michael Rivard, appellant's current treating psychiatrist at ASH. He began treating appellant one month before the January 17, 2001 BPT hearing. Dr. Rivard testified that appellant suffered from a severe mental disorder, chronic paranoid schizophrenia. It was his opinion that appellant could never be "cured" of this disorder and would always have residual symptoms. The trial court concluded that an individual's mental status is not fixed, but a condition that is subject to change. (See *People v. Coronado* (1994) 28

Cal.App.4th 1402 [33 Cal.Rptr.2d 835].) Thus, relitigation of this issue was not barred by the principles of res judicata or collateral estoppel and the People could seek another MDO determination.

*May 2001 MDO Proceeding*

At the second MDO proceeding, Dr. Rivard testified that appellant qualified as an MDO. At the time of the BPT hearing in December 2000, he had an intense and inappropriate affect. He was extremely paranoid and believed that people were going to attack him. Due to his dangerousness, an order was in place authorizing involuntary treatment with psychotropic medication.

Dr. Rivard considered appellant's severe mental disorder to be an aggravating factor in the commission of the underlying offense. Two weeks before the assault, appellant appeared to be suffering from a delusional disorder and displayed psychotic symptoms. He was agitated and paranoid, refused his medication, and required restraints. Haldol was administered and, five days later, he was admitted to the inpatient psychiatric unit at the California Medical Facility (CMF) in Vacaville. At that time, his mental status was within normal limits, but he rapidly decompensated. Six days later he committed the battery.

Defense counsel called Dr. Roach to testify to the findings made in his 1999 report. Dr. Roach stated that appellant did not have a severe mental disorder as of the BPT hearing in 1999. He had based his conclusion on his evaluation of appellant as well as the reports of other mental health professionals. Neither provided direct evidence of psychosis. Rather, appellant's resistance to mental health treatment was due to his antisocial personality disorder, as demonstrated by his distrust of authority figures. This disorder was exacerbated by being in a correctional setting. Dr. Roach emphasized the importance of a report prepared by CMF following the assault. The psychiatric officer on duty was quoted as saying that appellant's mental status had nothing to do with the incident. Dr. Roach testified that appellant had not qualified as an MDO when he issued his report in 1999.

The court denied appellant's 2966, subdivision (b) petition, finding that he suffered from a severe mental disorder which was an aggravating factor in the underlying offense. It ordered him committed to the California Department of Mental Health. Appellant appeals the denial of the motion and MDO petition.

DISCUSSION

Section 2962 lists the criteria that must be met to qualify a prisoner as an MDO. The trial court must consider whether 1) the prisoner has a severe

mental disorder; 2) the prisoner used force or violence in committing the underlying offense; 3) the severe mental disorder was one of the causes or an aggravating factor in the commission of the offense; 4) the disorder is not in remission or capable of being kept in remission without treatment; 5) the prisoner was treated for the disorder for at least 90 days in the year before his release; and 6) by reason of his severe mental disorder, the prisoner poses a serious threat of physical harm to others. (§ 2962, subds. (a)-(d)(1).) Appellant does not challenge the sufficiency of the evidence. ██ He argues that the principles of double jeopardy and res judicata barred relitigation of his mental state in the second MDO proceeding.

The principles of jeopardy are inapplicable to our analysis because the MDO statutory scheme is civil in nature. (*People v. Robinson* (1998) 63 Cal.App.4th 348, 349 [74 Cal.Rptr.2d 52]; *People v. Superior Court* (*Myers*) (1996) 50 Cal.App.4th 826, 834 [58 Cal.Rptr.2d 32].) However, under the doctrines of res judicata and collateral estoppel, claims and issues that have already been litigated and decided cannot be relitigated in a subsequent proceeding. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 848-849 [25 Cal.Rptr.2d 500, 863 P.2d 745].) The People rely on *People v. Coronado, supra,* 28 Cal.App.4th 1402, to argue that collateral estoppel does not apply because the trial court made no findings in the first MDO proceeding.

In *Coronado*, the petitioner was convicted of a battery upon a police officer and sentenced to prison. Before his release, the BPT certified him as an MDO. At the MDO proceeding, the People indicated they could not go forward because they had medical evidence that the petitioner did not suffer from a severe mental disorder. He was released on parole. His mental state subsequently deteriorated and he was taken into custody. When he was due for release the second time, the People sought an MDO certification. (*People v. Coronado, supra,* 28 Cal.App.4th at pp. 1404-1405.) Where an MDO's mental state has deteriorated while on parole, and he has been reincarcerated on the same underlying offense, the People may seek an MDO determination when he is due for release. (*Id.* at p. 1408.)

The People's reliance on *Coronado* is misplaced because its facts differ from those before us. The *Coronado* court did not conduct a hearing before the petitioner was released on parole. Rather, the People indicated they could not go forward. Here, the court conducted a trial in response to appellant's 1999 petition. It admitted three mental health evaluations into evidence, requested the comments of counsel, granted appellant's petition and discharged him on parole. From these facts we can infer that the court impliedly found that appellant did not qualify as an MDO. Because the trial court did not articulate its findings, we look to the contents of Dr. Roach's report to

determine the basis for its ruling. ■ "We imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings." (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928 [76 Cal.Rptr.2d 866].)

■ In his 1999 report, Dr. Roach stated that appellant did not qualify as an MDO because he did not have a severe mental disorder. Dr. Roach diagnosed appellant as suffering from polysubstance dependence and an antisocial personality disorder. His diagnosis was supported by appellant's "[h]istory of assaultiveness and violence particularly in correctional settings. Fully warrants [diagnosis] of Antisocial P.D., with criminal [history] starting at age 8 and time spent in CYA [California Youth Authority] before reaching adult age."

Dr. Roach indicated that appellant's lack of a severe mental disorder precluded a finding that a serious mental disorder was an aggravating factor in the commission of the offense. "This patient has a [history] of being very antisocial and he reacts, violently by [history], to attempts to restrain him or adopt an authoritarian posture with him. He admits to lifelong problems with 'authority figures' and his assault is consistent with [his] beliefs and personality, not influenced by [a] PC 2962 'serious mental illness.'" Dr. Roach concluded that the question of remission was likewise inapplicable because appellant "has no PC 2962 serious mental illness."

Although Dr. Roach confirmed that appellant had received the requisite 90 days of treatment prior to his release, he added, "He has been in [treatment], but I believe for a personality disorder, not a serious mental illness." Dr. Roach also concluded that appellant did not represent a substantial danger of physical harm to others. "[Appellant] is undoubtedly [potentially] violent as his extensive criminal history shows. However, . . . he has been taken off psychotropic [medicines] and has not shown symptoms which would cause me to believe he represents a substantial danger of physical harm to others *by reason of his severe mental disorder*." (Italics in original.) Dr. Roach agreed that appellant had committed a crime of force or violence.

In his report, Dr. Roach stated five times that appellant did not suffer from a severe mental disorder. From this evidence, we can infer that the trial court impliedly found that appellant did not have a severe mental disorder at the time of the BPT hearing in 1999. We consider the effect of this finding on the remaining statutory criteria.

Of the criteria listed in section 2962, only three might be capable of change: the existence of a severe mental disorder; whether the disorder is in

remission and whether the prisoner poses a serious threat of physical harm to others. The remaining three criteria concern past events that once established, are incapable of change: whether the prisoner used force or violence in committing the underlying offense; whether he was treated for the disorder for at least 90 days in the year before his release; and whether his severe mental disorder was one of the causes or an aggravating factor in the commission of the underlying offense.

Appellant committed the battery in 1996. Based on the opinion of his treating psychologist in 1999, the trial court found that appellant did not suffer from a severe mental disorder. As a result of this finding, the trial court necessarily also found that a severe mental disorder was not an aggravating factor in the commission of the battery. Because this element is incapable of change, it may not be relitigated. To allow relitigation of the circumstances surrounding appellant's commitment offense would violate the principles of res judicata and collateral estoppel. Thus, where a trial court has found that a severe mental disorder was not an aggravating factor in the commission of the crime, the People are precluded from seeking a second MDO determination based on the same underlying offense.

The judgment (order of commitment) is reversed.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied June 25, 2002, and respondent's petition for review by the Supreme Court was denied August 14, 2002. Baxter, J., and Chin, J., were of the opinion that the petition shoud be granted.