Filed 5/28/14  P. v. Tafolla CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH TAFOLLA,<br><br>    Defendant and Appellant. | B248400<br><br>(Los Angeles County<br>Super. Ct. No. VA123570) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John A. Torribio, Judge.  Affirmed with directions.

Jeffrey J. Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Susan Sullivan Pithey, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Joseph Tafolla contends we should reverse his conviction for dissuading a witness from testifying (Pen. Code, § 136.1, subd. (a)(1))[1] because the trial court erred in admitting certain evidence under Evidence Code section 352. He also asserts the court erred in limiting his presentence conduct credits. We direct the court to correct an error in the abstract of judgment but otherwise affirm.

## FACTS

### 1. *The Underlying Case: the Velasquez Shooting*

On November 1, 2010, Robert Velasquez was shot to death in Pico Rivera. The suspects in the case were Michael Barrios, Enrique Medina, and Thomas Arellanes, members of the Brown Authority gang. Tina Perez gave detectives information about the Velasquez shooting. She identified the three suspects in photographs and told detectives she saw the three of them at her house prior to the shooting. The three suspects were charged with first degree murder. Perez was subpoenaed to testify at their preliminary hearing and trial. She testified at both.

### 2. *Appellant's Communications with Perez Regarding the Velasquez Case*

Perez has known appellant and his family since 2003. They lived in the same neighborhood, and she knew appellant very well. Appellant knew Perez's son and would visit her home often. She knew appellant was a member of Brown Authority. Other members of Brown Authority would also frequent her home. Appellant visited her home unannounced on December 3, 2011, 11 days before the preliminary hearing in the Velasquez case. Perez was very nervous about testifying, and she asked appellant what she should do. She knew Barrios, Medina, and Arellanes, and Barrios in particular had been to her home on many occasions. She knew Barrios went by the nickname "Whisper" and Arellanes by the nickname "Soldier." She was "torn" because she had known Barrios for many years and it was going to be hard for her to testify against him.

---

[1]      Further undesignated statutory references are to the Penal Code.

2

She was also concerned about retaliation because she lived in "their area, their dominion." Appellant told her to "plead the fifth."

Appellant also talked to Perez about another murder case (not the Velasquez case) in which his sister, Jennifer Tafolla,[2] was a defendant. Someone named "Freddy" had testified at Jennifer's preliminary hearing. Appellant said he wanted to "kick his ass" because he had testified. He "hated" Freddy but said "they couldn't take him out until the trial was over because it would mess up Jennifer's case." Jennifer was also a Brown Authority member.

Perez contacted Detective Hank Ortega four days after appellant's visit. The detective talked to her in person. She told the detective what appellant said about pleading the fifth and wanting to "hit" a witness in his sister's case. Detective Ortega thought Perez was concerned and seemed nervous. She said she feared for her safety and felt like appellant was threatening her with the same thing when he talked about "taking out" Freddy.

The preliminary hearing in the Velasquez case took place on December 14, 2011. Prior to the hearing, Perez talked to Detective Wayne Holston about moving out of her neighborhood, which was in Brown Authority gang territory. He encouraged her to move because she was "in fear." But before the hearing, neither Detective Holston nor Detective Ortega talked to Perez about a governmental entity providing her with funds to move. After the preliminary hearing, Detective Holston told her he heard about a program in which the city might purchase the homes of witnesses so that they could relocate.

Two days after Perez testified at the preliminary hearing, she received a text message from appellant. The text read: "Buenos dias. Just wanted 2 touch bases wit u. I know that I don't have 2 remind u cuz u no what time it is, but whisp wants me 2

---

**2** Because appellant's sister shares his surname, we will refer to her by her first name for the sake of clarity. We do not intend this informality to reflect a lack of respect.

remind u n e ways.  Plead the 5th n tell ur boy the same.  Luv u!!!"  Perez understood "whisp" referred to Barrios.  "[U]r boy" referred to her son.  She understood "plead the 5th" meant "[t]o not say a word."  She testified she did not feel threatened by appellant's message.

Perez contacted Detective Ortega again on December 16, 2011.  According to Perez, she showed him appellant's text message and asked, "Does this sound like a threat so I could get money to move out of my home?"  She was "laughing like a joke" when she said this.  She was not scared.  She wanted funds to help her relocate.

According to Detective Ortega, they did not speak about a relocation program in which the government might purchase her house; he was not aware of such a program at the time.  She never asked him whether the text message was enough of a threat to get relocation funds.

## PROCEDURAL HISTORY

The jury found appellant guilty of dissuading a witness from testifying (§ 136.1, subd. (a)(1)) and found gang allegations to be true (§ 186.22, subd. (b)).  The court found true the allegation of a prior strike under the "Three Strikes" law.  (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)  It also found true the allegations that appellant had served three prior prison terms under section 667.5, subdivision (b).

For the substantive offense, the court sentenced appellant to the upper term of three years and doubled the term under the Three Strikes law.  (§§ 667, subd. (e)(1), 1170, subd. (h)(1), 1170.12, subd. (c)(1).)  It then added a term of five years for the gang enhancement and a total of three years for the three prior prison terms.  (§§ 186.22, subd. (b)(1)(B), 667.5, subd. (b).)  Appellant thus received a total of sentence of 14 years in state prison.  The court awarded him 961 days of presentence credit, consisting of 836 actual days served and 125 days of conduct credits.  Appellant timely appealed.

## DISCUSSION

### 1.  Evidence of Jennifer's Trial

Appellant contends the court erred in admitting evidence that Jennifer's trial was for murder because the specific charge against her was irrelevant.  He argues the court

4

should have excluded the nature of the charge under Evidence Code section 352 because the only purpose of informing the jury she was facing murder charges was to inflame and prejudice the jury. Appellant has forfeited the contention on appeal, but even had he not, the trial court did not err.

Appellant objected at trial to evidence that Jennifer "was accused," arguing there was no connection between Jennifer's case and the Velasquez case in which Perez was to testify. The prosecution argued appellant himself told Perez he was going to "get" the witness, Freddy, in Jennifer's case and thus the evidence was relevant for its potential impact on Perez. The court noted it was considering undue prejudice, but it found the evidence of Jennifer's case to be sufficiently probative because it went "to the state of mind of the recipient." It overruled appellant's objection.

Preliminarily, we note appellant's argument below was not the same argument he now makes. In the trial court, appellant objected to a broader category of evidence (any mention of Jennifer as a criminal defendant). On appeal, appellant objects to a subset of that evidence (the specific charges against her). The trial court did not expressly rule on whether the evidence should be sanitized so that "murder" charges were not mentioned. Appellant never made that specific objection to the court. Generally, we will not review the question of admissibility in the absence of a specific and timely objection in the trial court based on the same ground urged on appeal. (*People v. Rogers* (1978) 21 Cal.3d 542, 548.) Moreover, "when making [an Evidence Code] section 352 objection grounded upon the existence of an evidentiary alternative, . . . the objecting party [must] identify the evidentiary alternative with specificity. Otherwise, the trial court will not be fully apprised of the basis on which exclusion is sought; nor can the trial court conduct a balancing analysis which involves weighing the probative value of the alternative." (*People v. Holford* (2012) 203 Cal.App.4th 155, 170.) Appellant forfeited his contention that the court should have sanitized the nature of the charges by failing to argue this alternative below. "'A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct.'" (*Id.* at p. 169, italics omitted.)

5

Assuming appellant had not forfeited the contention, we would nevertheless conclude the court did not err. The court has the discretion to exclude evidence if its probative value is substantially outweighed by the probability that it will create a substantial danger of undue prejudice. (Evid. Code, § 352.) We review a trial court's determination under Evidence Code section 352 for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 724.) Abuse of discretion occurs when "there is a clear showing the trial court exceeded the bounds of reason, all of the circumstances being considered." (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 32.)

"Evidence is substantially more prejudicial than probative [citation] if . . . it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome . . . .'" (*People v. Waidla, supra*, 22 Cal.4th at p. 724.) "'"Prejudice" as contemplated by [Evidence Code] section 352 is not so sweeping as to include any evidence the opponent finds inconvenient. Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of the proponent. . . . "'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. . . .[']"] . . . ["'T]he statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' [Citation.]"'" (*People v. Doolin* (2009) 45 Cal.4th 390, 438-439, citations omitted.)

Here, the evidence of Jennifer's case was more probative than prejudicial. As the court pointed out, the evidence was relevant for its impact on Perez. Appellant told Perez he wanted to retaliate against the witness in Jennifer's case and at the same time advised Perez to plead the fifth as a witness. Perez told Detective Ortega she feared for her safety after that and felt like the threat against her was similar to the threat against the witness in Jennifer's case. The similarity of the cases -- both were against Brown Authority members, both involved homicide -- was relevant because it would have demonstrated to Perez that in serious cases, appellant was willing to threaten witnesses with serious

consequences. The similarity between the cases might also have heightened Perez's fear. The type of case in which Jennifer was involved was not just an extraneous factor.

Appellant argues the nature of the charges against *Jennifer* served only to inflame the jury against *him*. We are not so persuaded. We credit jurors with intelligence and common sense. (*People v. Coddington* (2000) 23 Cal.4th 529, 594, overruled on other grounds by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) Any chance the jurors were inflamed against appellant because of something his sister was accused of doing was slight and did not outweigh the probative value of the evidence. The evidence did not pose an "intolerable 'risk to the fairness of the proceedings or the reliability of the outcome.'" (*People v. Waidla, supra*, 22 Cal.4th at p. 724.) It is far more likely the outcome was influenced by evidence that appellant told Perez he wanted to retaliate with violence against a witness and then told her to "plead the 5th" during the same visit.

## 2. Sentencing

Appellant contends the court erred in limiting his presentence conduct credits to 15 percent because there was no jury finding on the facts that disqualified him from earning full credits. Alternatively, if no jury finding was required, appellant contends we must remand for an express finding by the court on the disqualifying facts. We disagree the court erred and reject the need for a remand. Additionally, we note the abstract of judgment incorrectly states the subdivision under which the court imposed the gang enhancement, and we therefore correct the abstract.

### a. No Requirement of Jury Finding

Section 2933.1 limits presentence conduct credits to 15 percent of the actual time served for persons convicted of certain violent felonies (§ 2933.1, subds. (a), (c).), including "[t]hreats to victims or witnesses, as defined in Section 136.1" (§ 667.5, subd. (c)(20)). Appellant argues he was convicted under section 136.1, subdivision (a)(1), while the qualifying violent felony involving "threats to victims or witnesses" is described by a different subdivision—section 136.1, subdivision (c)(1).

Section 136.1, subdivision (a)(1), describes a "wobbler" offense. It provides anyone who "[k]nowingly and maliciously prevents or dissuades any witness or victim

from attending or giving testimony at any trial, proceeding, or inquiry authorized by law" is guilty of an offense that may be punished as either a misdemeanor or felony. (§ 136.1, subd. (a)(1).) The court punished appellant under this subdivision as a felon. Section 136.1, subdivision (c)(1) states any person who commits an act described by subdivision (a), "[w]here the act is accompanied by force or by an express or implied threat of force or violence," is guilty of a felony that carries an increased state prison triad. Subdivision (c) is the only portion of section 136.1 referring to "threats." Appellant asserts he was entitled to a jury finding on whether he threatened Perez within the meaning of subdivision (c) before the court could use that fact to increase his punishment. He equates the 15 percent limitation in his presentence credits to an increase in punishment.

In *People v. Garcia* (2004) 121 Cal.App.4th 271 (*Garcia*), the court examined and rejected the same argument, except that the "violent felony" at issue was first degree burglary. To limit the defendant's credits to 15 percent, another person other than an accomplice had to be present in the residence during the burglary. (*Id.* at p. 275.) The defendant argued he was entitled to a jury finding on this fact. He relied on *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), as does appellant, which held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.)

The *Garcia* court held that "section 2933.1, subdivision (c)'s limitation on presentence conduct credits is not a sentencing enhancement," and it does not operate to increase maximum sentences for violent felonies. (*Garcia, supra*, 121 Cal.App.4th at p. 277.) "Rather, the provisions for presentence conduct credits function as a sentence 'reduction' mechanism outside the ambit of *Apprendi.*" (*Ibid.*) Accordingly, because "[l]essening the 'discount' for good conduct credit does not increase the penalty beyond the prescribed maximum punishment[,] [it] does not trigger the right to a jury trial identified in *Apprendi.*" (*Ibid.*) The court further held it was part of the trial court's traditional sentencing function to determine whether the defendant's conviction qualified as a violent felony. (*Id.* at p. 278.)

8

The California Supreme Court cited *Garcia*'s reasoning with approval in *People v. Lara* (2012) 54 Cal.4th 896, 901-902 (*Lara*) and went on to hold that credit disabilities need not be pleaded and proved to the trier of fact. (*Id.* at p. 906.) Moreover, the *Lara* court noted the cases requiring pleading and proof to the jury of facts that increase a defendant's sentence, but the court did "not believe the rule can properly be extended to require similarly formal determination of the facts that limit a prisoner's ability to earn conduct credits." (*Id.* at p. 903.)

In accordance with *Garcia* and *Lara*, appellant was not entitled to a jury finding on whether he committed the qualifying violent felony—that is, whether he used "an express or implied threat of force or violence" to dissuade Perez. (§ 136.1, subd. (c)(1).) The court did not err in limiting his credits in the absence of a jury finding.

*b. Court's Implied Finding Sufficient*

Assuming we disagree appellant was entitled to a jury finding, he contends we must remand for the court to make an express finding that he threatened Perez because the trial court was unaware it should decide this issue. To the contrary, the record demonstrates the court was not unaware of the issue. The prosecution's sentencing memorandum flagged the 15 percent limitation for those convicted of a "violent felony" and cited the relevant statutes (§§ 667.5, subd. (c), 2933.1). When the court asked about presentence credits at the sentencing hearing, defense counsel replied: "836 actual days. *At 15 percent* that's an additional 125 days." (Italics added.) The court then pronounced appellant had credit for 836 actual days plus 125 days of conduct credit. Thus, the court impliedly found appellant had committed a violent felony limiting his credit to 15 percent of actual time served.

Appellant cites no authority demonstrating an implied finding was insufficient. On the other hand, under the doctrine of implied findings, we imply all findings necessary to support the judgment. (*People v. Francis* (2002) 98 Cal.App.4th 873, 878.) A remand is unnecessary.

9

*c. Correction to Gang Enhancement in Abstract of Judgment*

In the oral pronouncement of sentence, the court stated it was "add[ing] five years for the 186.22 enhancement," without expressly identifying the applicable subdivision of the statute. The abstract of judgment shows appellant received a five-year enhancement for the gang allegations and cites section 186.22, subdivision (b)(4). Subdivision (b)(4) provides for an indeterminate term of life imprisonment when defendants are convicted of certain enumerated felonies. The court did not sentence appellant to an indeterminate term of life imprisonment. The abstract is thus incorrect in citing section 186.22, subdivision (b)(4).

The court sentenced appellant under subdivision (b)(1)(B) of section 186.22, which provides for an enhancement of five years when the defendant is convicted of a serious felony. The abstract of judgment should be corrected so that it cites subdivision (b)(1)(B). (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [clerical error in abstract of judgment may be corrected on appeal].)

## DISPOSITION

The trial court is directed to prepare an amended abstract of judgment that shows the court imposed the five-year gang enhancement under section 186.22, subdivision (b)(1)(B). The court shall forward a copy of the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.                    GRIMES, J.

10