Filed 4/20/15  In re I.C. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re I.C., a Person Coming Under the Juvenile Court Law. | B254988 |
| _____ | (Los Angeles County Super. Ct. No. TJ20495) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| I.C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Catherine J. Pratt, Commissioner.  Affirmed.

Bruce G. Finebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Blythe J. Leszkay and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Minor I.C. appeals from the juvenile court's adjudication and disposition orders on a Welfare and Institutions Code section 602 petition, alleging appellant committed robbery (Pen. Code, § 211). He argues the robbery finding is not supported by substantial evidence since the court did not credit the victim's testimony that appellant took away his cell phone at gun point. We conclude that other evidence supports the robbery finding and affirm the orders.

## PROCEDURAL AND FACTUAL SUMMARY

On December 3, 2013, the victim, Arthur Stephen, was talking to his mother on his cell phone while walking down the street, when appellant pulled up from behind him on a bicycle. Appellant was 16 years old, while Stephen was 28 years old, but appellant admittedly knew Stephen was "kind of special." When he saw appellant, Stephen hurried to hang up the phone and put it in his jacket pocket.

Appellant asked if Stephen had a phone or if appellant could use his phone. Stephen did not answer because he was "so shocked to see" appellant, and he did not allow appellant to use the phone. At the adjudication hearing, Stephen testified appellant "started checking my pockets to see what I had," "patted" the pocket, "went into" it, "and took the phone." Stephen denied having told a police officer that he took out the phone by himself, or that appellant had threatened to shoot him. Stephen variously testified that appellant pulled out a "small silver gun" when Stephen asked for his phone back, or after Stephen refused to let him use the phone. Stephen also testified he was scared before he saw the gun, and that it "looked like" appellant had a gun "bulging in his pocket."

Appellant tried to make a call, but could not because the phone was locked and Stephen refused to give him the passcode. Appellant then rode away on his bicycle without returning the phone. Stephen told his mother that his phone had been stolen, tried calling appellant on the phone in the hope he would bring it back, and reported it stolen five days later.

At the adjudication hearing, Officer Han testified that on December 8, 2013, Stephen reported appellant had startled him by pulling up on his bicycle; had initially

simulated a gun by putting his finger in his pocket; had said, "Give me your phone or I will shoot you"; had pulled a chrome revolver; and had rummaged through Stephen's pockets. Stephen was impeached with Officer Nemeroff's report, which stated Stephen had reached into his own pocket to retrieve the phone.

Appellant testified he had been "hanging out" on Stephen's porch when Stephen "len[t]" him the phone. He denied having threatened Stephen and claimed never to have seen or used a gun. In appellant's version of events, he used the phone to call and text "people to hang out with," then accidentally put it in his own pocket and rode away with it. Appellant admitted he did not return the phone when Stephen started calling it, and sold it to a store several days later.

In ruling on the robbery allegation in the Welfare and Institutions Code section 602 petition, the court was concerned about "the use of a gun, whether it was a simulated gun, when it was pulled," and could not "conclude beyond a reasonable doubt that a gun was used." Nevertheless, the court sustained the petition, finding that Stephen had been "fearful" and "intimidation" had been used. The court stated: "If they were on truly equal footing, then if [appellant] takes the phone, then he would give it back to him. He wouldn't ride away with it in his pocket. [¶] I think that [appellant's] indication that he forgot that he had it, that he rode away with it is disingenuous, and I think that calls into question any of the rest of his testimony. [¶] So while, again, I cannot conclude 100 percent that there was a gun, I do believe that I can conclude beyond a reasonable doubt that force or fear was used in taking the phone."

At the time of disposition, appellant already had been ordered to suitable placement for a maximum term of 5 years, 4 months, based on the disposition of several earlier petitions. (*In re I.C.* (Dec. 17, 2014, No. B253859) [nonpub. opn.].) The court followed the probation officer's recommendation to keep appellant in suitable placement under its previous order.

This appeal followed.[1]

## DISCUSSION

The standard of review of the sufficiency of the evidence in delinquency cases is the same as in criminal cases. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540). We review the record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction. (*Ibid*.) We do not resolve issues of witness credibility or conflicts in the evidence as that is the trier of fact's exclusive province. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "[T]he trier of fact may believe . . . only part of a witness's testimony and disregard the rest. On appeal, we must accept that part of the testimony which supports the judgment. [Citation.]" (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.)

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) Appellant argues that without the alleged gun use, there is no evidence supporting the fear element of robbery. We disagree.

While the court gave appellant the benefit of the doubt regarding the actual use of a gun, it did not expressly find he did not simulate a gun. In the absence of an express finding to the contrary, we may imply all findings necessary to support the judgment. (*People v. Francis* (2002) 98 Cal.App.4th 873, 878; *Reid v. Moskovitz* (1989) 208 Cal.App.3d 29, 32 [appellate court will not imply finding where record shows trial court expressly declined to make it].) According to Officer Han, Stephen reported appellant had simulated a gun and threatened to shoot, which is sufficient by itself to support the robbery finding. (*People v. Wolcott* (1983) 34 Cal.3d 92, 100.) At trial, Stephen did not

---

[1] Although appellant purports to appeal from the disposition order, he does not raise any issues about that order, noting only that the court did not impose a separate maximum term of confinement in this case. In case No. B253859, *supra*, we reversed the finding of felony vandalism and remanded for a recalculation of appellant's maximum confinement time. Since the issue is not before us, we express no view as to the effect of any recalculation in that case on the disposition of this case.

testify to the reported threat, but he claimed "[i]t kind of looked like" appellant had a weapon bulging in his pocket. The evidence is sufficient to support an implied finding that appellant simulated having a gun.

Regardless, the use of a weapon or an express threat is not required to establish the element of fear, which need not be extreme. (*People v. Morehead* (2011) 191 Cal.App.4th 765, 775.) "[T]he fear necessary for robbery is subjective in nature, requiring proof 'that the victim was in fact afraid, and that such fear allowed the crime to be accomplished.' [Citation.]" (*People v. Anderson* (2007) 152 Cal.App.4th 919, 946.) Contrary to appellant's contention, there is evidence his actions intimidated Stephen, who reported being "startled" and "shocked" when appellant "pulled up on" him from behind, and being "scared" before he saw any weapon. Although no evidence regarding Stephen's mental abilities was introduced, appellant himself admitted knowing Stephen was "kind of special," supporting an inference that he knowingly took advantage of Stephen's vulnerability. (See *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709 [recognizing relevance of victim's characteristics].)

Consistent with his initial report to Officer Han, Stephen testified appellant rummaged through his pockets and helped himself to the phone. Appellant analogizes rummaging through a victim's pockets to the surreptitious actions of a pickpocket because it involves no more force than necessary to seize the property. (See *People v. Garcia* (1996) 45 Cal.App.4th 1242, 1246, overruled on other grounds in *People v. Mosby* (2004) 33 Cal.4th 353, 365, fn. 2.) The analogy is flawed. The open search through the pockets of a victim who has refused to turn over his property is a display of power and disrespect for the victim's will. (Pen. Code, § 211.) Even assuming the search involves no more force than necessary to locate and retrieve the property, it can reasonably be characterized as an act of intimidation.

To the extent appellant relies on his own testimony that Stephen let him use the phone, he invites us to reconsider the court's adverse credibility finding, which "call[ed] into question any of the rest of his testimony."

## DISPOSITION

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.


We concur:


MANELLA, J.


COLLINS, J.