Filed 6/17/25  P. v. Ignacio CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC RUBIO IGNACIO,<br><br>    Defendant and Appellant. | B329097<br><br>(Los Angeles County<br>Super. Ct. No. KA040038) |

        APPEAL from an order of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed.

        Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

# INTRODUCTION

Eric Rubio Ignacio appeals from an order denying his petition for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95).[1]  This is Ignacio's second appeal from a denial of his resentencing petition after an evidentiary hearing. In his first appeal, Ignacio argued substantial evidence did not support the superior court's finding that the prosecution met its burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 and 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

Although this Court determined the evidence at the evidentiary hearing was sufficient to support the superior court's order, we reversed due to then-recent legislative amendments which, among other things, limited a court's consideration of a prior appellate opinion to "the procedural history of the case recited." (§ 1172.6, subd. (d)(3); see *People v. Clements* (2022) 75 Cal.App.5th 276, 292.)  Because the court relied on the factual statement in the prior appellate opinion, we remanded for a new evidentiary hearing to conform to the amendment.  On remand, the court held another evidentiary hearing and denied Ignacio's petition.  In his second appeal, Ignacio again argues the evidence was insufficient to support the superior court's finding he was not entitled for relief under section 1172.6.  He alternately requests we remand for a third evidentiary hearing for the court to consider the impact of his youth on his mental state at the time of the offense.  We affirm.

---

[1]      All further statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1997, Anthony Boissiere was shot and killed at a house party in the City of Azusa. At the time, Ignacio was a member of a street gang called Azusa 13 along with Paul Ortiz, Gabriel Centeno, and Victor Blas. Boissiere was not a member of any gang. Ignacio, Ortiz, Centeno, and Blas (collectively, defendants) were charged with Boissiere's murder. Ortiz later admitted he was the shooter.

A. *Underlying Crime*

On July 18, 1997, Blas drove the defendants to a house party in a tan Buick Regal. Boissiere also attended the party with his friend Moses Alcala, Angelica Ramirez (Alcala's girlfriend), and another friend. Alcala had known each of the defendants for a year or more. When Alcala saw the defendants arrive, he told Boissiere and gave him a baseball hat to help him avoid being seen by the defendants. Alcala did this because he knew Boissiere fought with an Azusa 13 member named Nick Jaramillo two weeks before the party. Additionally, Jaramillo and Ignacio chased Boissiere down the street near Alcala's home a few hours after that fight. Alcala believed the defendants would retaliate against Boissiere.

Towards the end of the night, a fight broke out in a treehouse in the backyard. Alcala saw someone jump from the treehouse onto the roof of the house. Everyone headed to the front yard, including Alcala and Ramirez. As they stood in the front yard, Alcala and Ramirez observed Boissiere walking and speaking with Blas. Suddenly, Blas and Boissiere began to fight. Alcala saw Ignacio and either Ortiz or Centeno go to the tan

3

Buick Regal, open the passenger door, look for something, and retrieve it. He then watched Ignacio, Ortiz, and Centeno approach Boissiere and Blas, who were still fighting, and they all "jump[ed]" and "ganged up" on Boissiere. Alcala saw Boissiere fall to the ground and heard approximately five gunshots. Alcala saw the defendants drive off in the Buick. When he and his girlfriend returned to where Boissiere lay, someone was performing CPR on him.

Ramirez corroborated Alcala's testimony. At trial, she stated she observed two of the defendants go to the Buick and appear to retrieve something. She could not identify which of the defendants went to the Buick but testified both defendants had their hands in their pockets when they joined the fight. Ramirez heard at least three gunshots shortly thereafter. Patrick Glen Nordin, the organizer of the house party, testified at trial he heard four to five gunshots shortly after he heard the Buick's door slam. Nordin saw the Buick drive away but could not identify anyone in the car.

Boissiere died from his gunshot wounds. The police retrieved two expended bullets and six .25-caliber semiautomatic expended cartridges from the scene of the crime.

B.    *Trial and Sentencing*

The defendants were each charged with Boissiere's murder (§ 187, subd. (a)). The information alleged that a principal was armed with a firearm (§ 12022, subd. (a)(l)) and that the offense was committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(l)). The information also alleged one count of dissuading a witness (§ 136.1, subd. (c)(1)) against Ortiz with an attendant gang

4

enhancement allegation (§ 186.22, subd. (b)(1)). The defendants were tried together.

The People presented testimony and evidence as described above. At trial, Alcala also testified that Ortiz approached him after he testified at the preliminary hearing. Ortiz asked Alcala if he was going to be a witness and whether Alcala knew who pulled the trigger. When Alcala confirmed he would testify but that he did not know who the shooter was, Ortiz responded, "Good. Keep it that way and don't go back to court anymore."

The prosecution proceeded on the theory that a principal armed with a gun committed the murder. The prosecution argued each of the defendants was liable for Boissiere's murder either because each defendant directly aided and abetted the principal in committing the murder, or each defendant aided and abetted in committing the assault and the murder was the natural and probable consequence of that assault.

The jury found Ignacio guilty of second degree murder and found true the firearm and gang enhancement allegations. The trial court sentenced Ignacio to a term of 15 years to life plus one year for the firearm enhancement. This Court affirmed the judgment in an unpublished opinion. (*People v. Ignacio* (Feb. 7, 2000, B125562) [nonpub. opn.].)

C.    *Section 1172.6 Proceedings*

On February 6, 2019, Ignacio filed a petition for resentencing pursuant to former section 1170.95. The superior court concluded that because the jury was instructed on the natural and probable consequences theory of murder and the direct aider and abettor theory, and because the record did not disclose which theory the jury relied upon in reaching its verdict,

5

Ignacio had shown a prima facie case for relief. The court appointed counsel and issued an order to show cause.

In addition to the trial transcripts and the record of conviction, the parties offered new testimony from Los Angeles County Sheriff's Department Detective Tommy Harris and also from Ortiz. Detective Harris testified regarding Alcala's statements in a police interview shortly after the shooting. Alcala told Harris's partner that Ignacio, whom Alcala knew and recognized, and another defendant ran to the Buick, obtained something, and ran to the fight. Alcala then heard three or four gunshots.

Ortiz had not testified at trial. But at the evidentiary hearing Ortiz confessed he shot Boissiere on impulse. He explained he was under the influence of methamphetamine and alcohol on the night of the murder and had not slept in three weeks. Ortiz testified he obtained the gun from another Azusa 13 gang member before going to the party with the defendants. He kept it in his pocket and did not show the gun to Ignacio or any other defendant.

Ortiz testified that while on his way to buy beer, he heard someone yelling in the treehouse and believed the person was disrespecting him and Azusa 13. Ortiz climbed into the treehouse and punched the person, who jumped out of the treehouse. When Ortiz climbed down, he encountered a "loud talker" and pulled out the gun. He put the gun away when he was informed the loud talker was the cousin of another Azusa 13 member. Initially, Ortiz testified "Chino" told him this information. Ortiz confirmed Ignacio's gang moniker is Chino. Upon further questioning by defense counsel, Ortiz stated it was Centeno who told him the identity of the "loud talker."

6

Ortiz testified he decided to leave when he heard someone say, "call the cops" because he had just punched someone and had a gun. He went to the Buick to wait for the other defendants. Only Ignacio came back. Ortiz and Ignacio left the car to look for the others. When he encountered Blas fighting, Ortiz shot the person fighting with Blas because his "training in a gang fight [was] . . . you protect [a fellow gang member]." He only later discovered he shot Boissiere. Ortiz believed Ignacio was behind him when they approached the combatants. After the shooting, the defendants all ran to the Buick and left the party.

After considering the evidence from the trial, the new testimony at the evidentiary hearing, and counsel's arguments, the superior court denied Ignacio's petition. It found Ortiz was truthful in certain parts of his testimony but "absolutely untruthful in other parts." The court found Alcala's testimony that the four defendants participated in beating Boissiere more credible than Ortiz's account. The court concluded, "the clear evidence [is] that Mr. Ignacio participated in the assault of the incident; that during the course of the assault, he and Mr. Ortiz went to the car, returned to the fight, shot the decedent." Ignacio timely appealed.

This Court determined the evidence at the evidentiary hearing was sufficient to support the superior court's order denying the petition, but reversed due to then-recent legislative amendments to the resentencing statute. This Court concluded the Legislature amended section 1172.6 to render inadmissible "the factual summary and the factual conclusion found in an appellate opinion." (*People v. Ignacio* (May 16, 2022, B311152) [nonpub. opn.].) Instead, consideration of a prior appellate opinion at the evidentiary stage was limited to the procedural

7

history of the case.  (See § 1172.6, subd. (d)(3).)  The record disclosed the superior court "relied heavily, if not exclusively" on the facts stated in the appellate opinion addressing Ignacio's direct appeal.  (*People v. Ignacio, supra,* B311152, \*39.)  The Court concluded the amendment to section 1172.6 applied retroactively to Ignacio's case and remanded the matter for a new evidentiary hearing to comply with the amended statute.  (See *ibid.*)

On remand, the superior court conducted a second evidentiary hearing on December 6, 2022.  The parties did not present any new evidence and submitted on the record of conviction, as well as the testimony presented at the previous evidentiary hearing.  After taking the matter under submission, the court issued a two-page written opinion.  The court stated it relied on the trial testimony and Ortiz's testimony.  It further stated it did not consider Detective Harris's testimony or the Court of Appeal opinion.  The superior court found Ignacio was not entitled to relief because the prosecution proved beyond a reasonable doubt that Ignacio was guilty of second degree murder as an aider and abettor under California law as amended by Senate Bill No. 1437.  It concluded Ignacio was thus ineligible for relief under section 1172.6.  Beyond these determinations, it did not otherwise explain its ruling as it did after the previous evidentiary hearing.

Ignacio timely appealed.

## DISCUSSION

A.    *Section 1172.6 and Standard of Review*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony murder rule by amending sections 188 and 189. (See *People v. Reyes* (2023) 14 Cal.5th 981, 984 (*Reyes*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony murder rule in section 189, subdivision (e). (See *People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*); *People v. Wilson* (2023) 14 Cal.5th 839, 868-869.) Felony murder is not at issue in this case.

"'[N]otwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.'" (*Reyes, supra,* 14 Cal.5th at p. 990; accord, *People v. Gentile* (2020) 10 Cal.5th 830, 850.) "'[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.] In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding

9

the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the *act*, intent to aid the perpetrator in the commission of the *act*, knowledge that the *act* is dangerous to human life, and acting in conscious disregard for human life.'"[2] (*Reyes*, at pp. 990-991; accord, *Curiel, supra,* 15 Cal.5th at p. 463; *People v. Powell* (2021) 63 Cal.App.5th 689, 712-713 (*Powell).*)

Senate Bill No. 1437 provides a procedure in section 1172.6 for an individual convicted of felony murder or murder under the natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could not have been convicted of murder under the changes to sections 188 and 189. (See *Lewis, supra*, 11 Cal.5th at p. 959.) Where, as here, the petitioner makes the requisite prima facie showing he is entitled to relief under section 1172.6, the superior court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the

---

[2] In contrast, "'the natural and probable consequences doctrine did not require that the aider and abettor intend to aid the perpetrator in committing a life-endangering act . . . . What was natural and probable was judged by an objective standard and it was enough that murder was a reasonably foreseeable consequence of the crime aided and abetted.'" (*Reyes, supra*, 14 Cal.5th at p. 991.)

petitioner on any remaining counts.  (See § 1172.6, subds. (c), (d)(1).)

Section 1172.6, subdivision (d)(3), provides that at the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019.  The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. . . .  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).)

We review the superior court's decision to deny the petition after an evidentiary hearing for substantial evidence, provided the court understood the elements of the offense and applied the proper standard and burden of proof.  (See *Reyes, supra*, 14 Cal.5th at p. 988; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)  "In conducting our review, we consider the whole record in the light most favorable to the superior court's findings [citation], and we presume ""every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence."""" (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066; accord, *People v. Montanez* (2023) 91 Cal.App.5th 245, 270.)  "'The same standard governs in cases where the prosecution relies primarily on circumstantial evidence.' [Citation.]  We must 'presume, in support of the judgment, the existence of every fact the trier of fact could reasonably deduce from the evidence, whether direct or

11

circumstantial.'" (*Montanez,* at p. 271.)  In conducting this review, we resolve neither credibility issues nor evidentiary conflicts.  (See *ibid.*)

B.  *Substantial Evidence Supports the Superior Court's Finding Ignacio Aided and Abetted Second Degree Murder*

Ignacio contends there is insufficient evidence in the record to support the superior court's denial of his petition.  According to Ignacio, the evidence did not show beyond a reasonable doubt he harbored express or implied malice, a finding necessary for murder under the changes to sections 188 and 189.  (See *Curiel, supra,* 15 Cal.5th at p. 448.)  As to express malice, he contends there is no evidence he knew Ortiz had the intent to kill or that he shared that intent.  As to implied malice, Ignacio argues the evidence did not demonstrate he knew of or intended to aid Ortiz in a shooting, knowing the shooting was dangerous to human life, and that he acted in conscious disregard for human life.  We conclude substantial evidence supports the superior court's implied finding Ignacio committed the acts required and harbored the requisite mental state for aiding and abetting implied malice murder.[3]  We therefore need not address whether he also harbored express malice.

---

[3]  Although the superior court made no express findings regarding the credibility of witnesses or disputed facts as it did after the first evidentiary hearing, "'[w]e imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings.'"  (*People v. Francis* (2002) 98 Cal.App.4th 873, 878.)

To aid and abet an implied malice murder, the defendant must by words or conduct aid the perpetrator's commission of the life-endangering act and must know and intend to aid in that act. (See *Reyes, supra,* 14 Cal.5th at pp. 990-991; *Powell, supra,* 63 Cal.App.5th at pp. 713-714.) "For implied malice murder, that intent is that the perpetrator "'knows that his conduct endangers the life of another and . . . acts with conscious disregard for life.'"" (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1058.)

*People v. Schell* (2022) 84 Cal.App.5th 437, 443 is instructive. There, the defendant was one of eight gang members who beat the victim to death because they believed the victim had complained to law enforcement about them. One hit the victim with a baseball bat, another with a shovel, and a third stabbed him. The court found the defendant participated in the attack with his fists and feet. (See *id.* at p. 440.) The superior court denied the defendant's petition for resentencing under section 1172.6. (See *id.* at p. 442.) *Schell* affirmed and concluded that the defendant's "presence at the scene, his participation in the attack on the victim, his companionship with other perpetrators, his conduct before and after the crimes, and his motive of retaliation for disrespect all support the finding that he aided and abetted an implied malice murder." (*Id.* at p. 443.) *Schell* reasoned, "'It suffices that he knew he was aiding in a violent attack, knew dangerous weapons were being used against [the victim], and intended to stop [the victim] from escaping or defending himself by helping the perpetrators to surround and hit him.'" (*Ibid.*)

Here, substantial evidence supports the superior court's finding that Ignacio aided and abetted an implied malice murder. Like the defendant in *Schell,* Ignacio attacked Boissiere as part of

13

a group of gang members who sought to retaliate against Boissiere for disrespecting and fighting with another Azusa 13 member.  When Ignacio and Ortiz came across Blas, their fellow Azusa 13 member, fighting with Boissiere, Ignacio did not immediately join in the fight but accompanied Ortiz to retrieve something from the car.  He then returned to the fight with Ortiz and participated in beating Boissiere to the ground before Ortiz shot him.

Substantial evidence also supports the superior court's implied finding that Ignacio and Ortiz retrieved a gun from the car because the shooting occurred almost immediately after they returned.  The court could also have reasonably concluded Ignacio knew Ortiz was bringing a gun to a fistfight because he was there when Ortiz retrieved the gun.  Because Ignacio accompanied Ortiz back to the fight after Ortiz retrieved the gun, the court could reasonably have found Ignacio demonstrated an intent to aid Ortiz in the shooting.

Further, the superior court also had before it testimony from Ortiz (from the evidentiary hearing) and the prosecution's gang expert (from the trial) regarding the obligation a gang member has to protect a fellow gang member in a fight and to retaliate against the other person.  The expert testified such retaliation may include "simple beatings and then all the way up to murder."  Ortiz stated he shot Boissiere because his "training in a gang fight" was to protect a fellow gang member.  The high court has held that shooting a gun at someone is dangerous to life.  (See *Reyes, supra*, 14 Cal.5th at p. 992 [life-endangering acts include shooting at a victim].)  As in *Schell*, it is sufficient that Ignacio knew he was aiding in a violent attack, knew a firearm would be used against Boissiere, and stopped Boissiere from

14

escaping or defending himself by helping the defendants to knock him to the ground. (See *Schell, supra,* 84 Cal.App.5th at p. 443.)

Ignacio contends it is speculative to conclude he knew about Ortiz's gun or "that Ignacio knew and shared in Ortiz's rashly committed act."[4] "Because direct evidence of a defendant's intent rarely exists, intent may be inferred from the circumstances of the crime and the defendant's acts." (*People v. Sanchez* (2016) 63 Cal.4th 411, 457.) As stated, the evidence before the superior court allowed it to reasonably conclude Ignacio knew Ortiz retrieved a gun from the car and intended to use it. By returning to the fight with Ortiz, Ignacio demonstrated his intent to aid in Ortiz's life-endangering act of shooting at Boissiere.

Ignacio argues there was no evidence of his or of Ortiz's intent to kill. But, "[i]mplied malice does not require an intent to kill." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653, 142; *People v. Lee* (2020) 49 Cal.App.5th 254, 263-264.) On this record, substantial evidence supports the court's denial of Ignacio's petition on the ground he could still be convicted of aiding and abetting second degree implied malice murder.

---

[4] Ignacio further contends the People's remaining substantial evidence arguments are speculative, such as the argument that Ignacio aided the shooting by preventing anyone from interfering when there was no evidence anyone interfered or tried to interfere. We do not rely on the People's substantial evidence arguments.

C.    *Ignacio Forfeited His Argument the Superior Court Did Not Consider Youth as a Factor in His Mental State*

For the first time on appeal, Ignacio argues he is entitled to have the court to consider his youth as a factor in determining whether he harbored implied or express malice.  Ignacio had just turned 18 years old at the time of the offense.  He relies on the absence of any mention of his youth in the court's order and on cases holding that the "'hallmark features' of youth" may be relevant to consideration of a defendant's mental state.  (*People v. Pittman* (2023) 96 Cal.App.5th 400, 418 (*Pittman*); see *People v. Ramirez* (2021) 71 Cal.App.5th 970, 987; *In re Moore* (2021) 68 Cal.App.5th 434, 454.)  Ignacio did not raise this argument in the superior court, and it is forfeited.  (See *Pittman,* at p. 416.)

Further, Ignacio does not cite anything in the record before us that would support his contention.  (See *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282-283 [failure to cite record forfeits issue on appeal].)  Ignacio fails to provide any facts and record citations that would support his argument that his youth affected whether he harbored the requisite mental state for implied malice murder.  (See *Pittman, supra*, 96 Cal.App.5th at p. 418 ["The cases discussing the role of youth in relation to criminal culpability 'stress two areas': youthful offenders' 'relative impulsivity' and 'their vulnerability to peer pressure.'"]; *ibid.* [concluding the ""hallmark features of youth"" may have been at play" given specific circumstances of the crime]; but see *People v. Mitchell* (2022) 81 Cal.App.5th 575, 595 ["Youth can distort risk calculations.  Yet every 18 year old understands bullet wounds require attention.  The fact of youth cannot overwhelm all other factors."].)  "[O]ur review is limited to those issues that have been adequately raised and supported in the appellant's brief" and "it

16

is not the appellate court's role to construct theories or arguments" for an appellant. (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721; see Cal. Rules of Court, rules 8.204(a)(1)(B) [appellate brief must "support each point by argument and, if possible, by citation of authority"], and 8.360(a) [briefs in criminal appeals must comply with rule 8.204].)

## DISPOSITION

The order denying Ignacio's petition for resentencing pursuant to section 1172.6 is affirmed.

MARTINEZ, P. J.

We concur:

SEGAL, J.

FEUER, J.

17